**Electronically Filed**
**Intermediate Court of Appeals**
**30498**
**25-OCT-2011**
**09:22 AM**

NO. 30498

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ROBERT GRANT, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 08-1-521)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Robert Grant (Grant) appeals from the Judgment of Conviction and Sentence, filed on April 16, 2010, in the Circuit Court of the Third Circuit (circuit court).[1] After a jury trial, Grant was found guilty of the offense of manslaughter in violation of Hawaii Revised Statutes (HRS) § 707-702(1)(a) (Supp. 2009).[2]

---

[1] The Honorable Glenn S. Hara presided.

[2] HRS § 707-702 states in relevant part:

> §707-702 **Manslaughter.** (1) A person commits the offense of manslaughter if:
> (a) The person recklessly causes the death of another person; or
> . . .

On appeal, Grant raises the following points of error:

(1) the circuit court erred when issuing its reply to Jury Communication No. 1 (reply) because (a) the communication was prejudicially misleading and inconsistent with the Hawai'i Standard Jury Instructions Criminal 6.04 (1991), and (b) the circuit court issued its reply to the jury without allowing additional summation argument thus violating Grant's rights to due process and assistance of counsel;

(2) the circuit court erred when it included the definition of "deadly force" in instructing the jury on self-defense because Grant was charged with Manslaughter in violation of HRS § 707-702(1)(a), which entails a "reckless" state of mind, not an "intentional" or "knowing" state of mind as required for "deadly force";

(3) the circuit court denied Grant his right to due process when it failed to rule on Grant's Motion for Hawaii Rules of Evidence (HRE) Rule 104 Determination of Admissibility of Iuka Akui's Alleged Communication of Threat to Witness Jerry Arnold filed December 11, 2009; and

(4) there was insufficient evidence to support the conviction in this case and the circuit court erred in denying Grant's Motion for Judgment of Acquittal.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, Grant's points of error are resolved as follows.

As an initial matter, with regard to Grant's first, second, and third points of error, his opening brief fails to comply with Rule 28(b)(4) of the Hawai'i Rules of Appellate Procedure (HRAP), which requires:

> [T]he appellant shall file an opening brief, containing . . . [a] concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii)

2

> where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.

(Emphasis added). In setting out the first three points of error, Grant's opening brief does not contain any citation showing where in the record the alleged error occurred, where the alleged errors were objected to or the manner in which the errors were brought to the circuit court's attention. We may therefore disregard these alleged points of error. See In re Contested Case Hearing on Water Use Permit Application Filed by Kukui (Molokai), Inc., 116 Hawai'i 481, 506, 174 P.3d 320, 345 (2007). Even if we reach the merits of each alleged point of error, we conclude there was no error.

(1) The circuit court did not err in its reply to Jury Communication No. 1 or in denying further summation argument. Jury Communication No. 1 asked the court to define "cause," stating:

> The first element to the offense of manslaughter as listed on pg. 22 of the jury instructions states that "the Defendant caused the death of another person". Please define "cause" - does the cause have to be the sole cause, the predominate cause, or can it be a contributory cause.

The circuit court replied to the jury's communication in the following manner:

> Conduct is the cause of a result when it is an antecedent but for which the result in question would not have occurred.
> In the following instance, recklessly causing a particular result is established even though the actual result caused by the defendant may not have been within the risk of which the defendant was aware:
> The actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence.
> The jury is to consider this response in light of all of the prior instructions given by the court including the instruction on page 8 of the set of written instructions given to the jury.

The circuit court's reply defining "cause" is based on the language in HRS § 702-214 (1993 Repl.) and HRS § 702-216

3

(1993 Repl.), and it accurately defines "cause." Grant argues that the circuit court's reply somehow conflicted with, undermined, or confused the instruction on "reckless" acts that was given to the jury. We do not agree. The jury communication did not ask for a definition of "reckless," and the circuit court thus did not give one in its reply. Grant does not argue that the reply in defining "cause" was erroneous. Grant does not argue that there was any error in the instructions defining when a person acts "recklessly." Importantly, the circuit court's reply included the statement that "[t]he jury is to consider this response in light of all of the prior instructions given by the court."

"Because the circuit court's response to a jury communication is the functional equivalent of an instruction, the standard of review for jury instructions also applies to reviewing a trial court's answers to jury communications." State v. Miyashiro, 90 Hawai'i 489, 492, 979 P.2d 85, 88 (App. 1999). The circuit court's reply was not, when considered with the jury instructions as a whole, prejudicially insufficient, erroneous, inconsistent, or misleading. See State v. Gonsalves, 108 Hawai'i 289, 292-93, 119 P.3d 597, 600-01 (2005).

The circuit court also did not err in submitting its reply to the jury without allowing for additional summation argument. Additional summation argument was not warranted in this case because the circuit court's reply did not introduce a new element or theory into the case, but rather, it simply clarified the definition of "cause." Unless there is a new theory or issue presented, a trial court is not required to allow the parties to make additional summation arguments after a supplemental instruction is given. See, e.g., United States v. Fontenot, 14 F.3d 1364, 1368 (9th Cir. 1994); Durden v. State, 406 N.E.2d 281, 283 (Ind. Ct. App. 1980). In this case, defense

4

counsel already had an opportunity to argue the issue of causation to the jury, and in fact did so during closing arguments.

(2) The circuit court's inclusion of the definition of "deadly force" in the instructions on self-defense did not mislead the jury and was not inconsistent with the charged offense of manslaughter. The instruction on self-defense and use of deadly force stated, in relevant part:

> Justifiable use of force, commonly known as self-defense, is a defense to the charges of Manslaughter and the included offenses of Assault in the Second Degree, and Assault in the Third Degree. The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justifiable. If the prosecution does not meet its burden then you must find the defendant not guilty.
>
> . . . .
>
> The use of deadly force upon or toward another person is justified when a person using such force reasonably believes that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.
>
> The use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter, or if the defendant knows that he can avoid the necessity of using such force with complete safety by retreating.
>
> . . . .
>
> "Deadly force" means force which the actor uses with the intent of causing, or which he knows to create a substantial risk of causing death or serious bodily injury.

Grant takes issue with that part of the instruction that states: "'[d]eadly force' means force which the actor uses with the intent of causing, or which he knows to create a substantial risk of causing death or serious bodily injury."

5

"It is the trial judge's duty to insure that the jury instructions cogently explain the law applicable to the facts of the case and that the jury has proper guidance in its consideration of the issues before it." State v. Locquiao, 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002) (internal quotation marks and citation omitted). As long as there is evidence to support such a finding by the jury, the degree of force used by a defendant in self-protection is a question for the jury and giving self-defense instructions that include a definition of use of deadly force is appropriate. See State v. Van Dyke, 101 Hawai'i 377, 387, 69 P.3d 88, 98 (2003); State v. Scott, 125 Hawai'i 30, 251 P.3d 47, No. 30499, 2011 WL 1878851, at *2 (App. May 12, 2011) (SDO); State v. Sua, 122 Hawai'i 546, 229 P.3d 364, No. 29500, 2010 WL 1765670, at *7 (App. Apr. 29, 2010) (mem.).

The evidence adduced at trial supported giving the instruction on use of deadly force in self-defense and also defining "deadly force" as part of the instruction. Grant testified and claimed that: decedent Daniel Martina (Martina) was the aggressor towards Grant; Martina made threats to Grant, including "I'll beat your ass" and "I'll fuck you up"; Martina was coming at Grant to hit him and took a swing at Grant before Grant initially pushed Martina away; Grant tried to go to his car but when he glanced behind, Martina was right there, almost on him, and Martina tried to punch Grant so Grant kicked Martina in the chest area; as a result of the kick, Grant saw Martina stagger back and later saw Martina on the ground.

There was witness testimony by Jerry Arnold (Arnold) and Talbert Lum Ho (Ho) that Grant and Martina got into an argument after Grant did not offer or give Martina a beer. Arnold testified that Martina was the aggressor, asking Grant if Grant wanted to "scrap." Arnold and Ho testified that during the

altercation, Grant punched Martina[3] and kicked Martina. Arnold described the kick as a "roundhouse" kick. As a result of the kick, both Arnold and Ho testified that Martina fell and hit his head on the asphalt. Ho testified that Martina went down "head first" and "backwards."

There was testimony by Dr. Gayle Suzuki, the Deputy Medical Examiner who conducted an autopsy on Martina, that Martina sustained extensive and significant skull fractures that resulted from an impact to the head that was "pretty severe, a lot of force or trauma."

Because there was evidence justifying the self-defense instruction and the inclusion of the definition of "deadly force" in the instructions, the circuit court did not err.

(3) Given the record in this case, Grant's due process rights were not violated when the circuit court did not rule on his Motion for HRE 104 Determination of Admissibility of Iuka Akui's Alleged Communication of Threat to Witness Jerry Arnold (motion). "The general rule is that an issue which was not raised in the lower court will not be considered on appeal." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 248, 948 P.2d 1055, 1089 (1997) (citation omitted). Grant does not point to anywhere in the record where he requested a hearing on the motion or otherwise made an objection to the lack of a ruling in order to preserve the issue for appeal. In this circumstance, there is no "ruling" to review, and the issue with respect to the lack of ruling has not been preserved for appeal.

In addition, we reject Grant's argument that the circuit court's failure to rule on the motion was effectively a denial of the motion which constituted reversible error. "The denial of a motion in limine, in itself, is not reversible error.

---

[3] According to Arnold, Grant punched Martina twice. According to Ho, Grant punched Martina once.

The harm, if any, occurs when the evidence is improperly admitted at trial." Miyamoto v. Lum, 104 Hawai'i 1, 7, 84 P.3d 509, 515 (2004). Even if we were to assume there was, in effect, a denial of Grant's motion, the evidence in question (i.e., an alleged threat by Akui) was never admitted at trial. Grant made the decision not to call Akui as a witness, even though Grant had not sought a ruling on his motion and never objected to the court's non-ruling on the motion.

Finally, we note that Grant fails to cite any authority to support his claim that his due process rights were violated, or that the circuit court reversibly erred, because it did not affirmatively rule on his motion regarding admissibility of evidence. Grant ignores the fact that he did not request a hearing on the motion, did not object at trial to a lack of a hearing, and apparently made no effort to raise the issue to the attention of the circuit court.

We therefore find no merit in Grant's third point of error.

(4) There was sufficient evidence to support the jury's conclusion convicting Grant of manslaughter and the circuit court did not err in denying Grant's Motion for Judgment of Acquittal. Grant claims that there are internal contradictions and inconsistencies in the testimony of Arnold and Ho that make their testimony unreliable and incredible.

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Keawe, 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005). In the context of a manslaughter conviction, there must be sufficient evidence to show that the defendant recklessly caused the death of another person. See HRS § 707-702(1)(a).

8

Arnold testified that he saw Grant punch Martina twice in the facial area and kick Martina in the head in a "roundhouse" style. Arnold testified that the kick was a "hard" one. Arnold further testified that Martina fell, his head hit the ground, and it sounded like a bowling ball being dropped on the floor.

Ho testified that Grant punched Martina in the upper torso area, and after Martina turned back from picking up his hat, Grant kicked Martina in the chest or head. Ho testified that, in terms of strength, the kick was "a pretty good kick" and that Grant "had some skills." After getting kicked, Martina fell backward and, according to Ho, the sound of Martina's head hitting the asphalt sounded like a "coconut hitting a rock."

Grant testified that he pushed Martina as Martina was approaching him. Grant further testified that when Martina came at him again, he kicked Martina in the chest area and Martina staggered backwards.

While their testimonies vary to some degree, Arnold, Ho and Grant each testified that Grant kicked Martina just prior to Martina falling to the ground.

Dr. Suzuki opined that Martina's cause of death was "cranial cerebral injuries due to blunt force injuries of the head due to an assault." Dr. Suzuki testified that the impact to Martina's skull was severe enough to cause the fracture to extend from the right side of the skull to the left side of the skull, or a partial ring fracture. She testified that Martina's brain was soft, swollen, bruised, and surrounded by blood. Dr. Suzuki further testified that "[a] simple collapse to the . . . hard surface wouldn't produce that severe a fracture."

Although there are some inconsistencies in the testimony of Arnold and Ho, reconciliation of such inconsistencies is for the jury to resolve, and appellate courts must limit their consideration to whether there is sufficient

9

evidence to sustain the verdict.  See State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) ("Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings.") (brackets and citation omitted); State v. Carvelo, 45 Haw. 16, 361 P.2d 45 (1961).  The evidence in the record is sufficient to support the jury's conclusion that Grant recklessly caused the death of Martina.

Therefore,

IT IS HEREBY ORDERED THAT the Judgment of Conviction and Sentence, filed on April 16, 2010 in the Circuit Court of the Third Circuit, is affirmed.

DATED:  Honolulu, Hawai'i, October 25, 2011.

On the briefs:

Brian J. De Lima
Francis R. Alcain
(Crudele & De Lima)
for Defendant-Appellant

Mary Ann J. Hollocker
Deputy Prosecuting Attorney
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

10